UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| Barry Davis<br><br>                                    Plaintiff,<br><br>v.<br><br>ZIMMER, INC.; ZIMMER HOLDINGS, INC.;  ZIMMER MELIA & ASSOCIATES, INC; AND ZIMMER ORTHOPAEDIC SURGICAL PRODUCTS, INC.<br><br>                                    Defendants. | Court File No.  3:11cv-251-S<br><br><br>ELECTRONICALLY FILED-<br><br>**COMPLAINT -JURY TRIAL**<br><br>**DEMAND** |

COMES NOW the Plaintiff, Barry Davis, by and through his undersigned Counsel, and for his Complaint against the Defendants, alleges as follows:

**NATURE OF THE CASE**

1.      This is an action for damages suffered by Barry Davis, as a direct and proximate result of Defendants' wrongful conduct in connection with the development, design, manufacture, distribution, and selling of Defendants' knee replacement product, the Zimmer NexGen Legacy Posterior Stabilized High Flex ("LPS High Flex") femoral component.

2.      The Zimmer LPS High Flex femoral component was developed, designed, manufactured, distributed, sold and deliberately promoted by Defendants as an improvement and additional option to  the Zimmer NexGen Legacy Posterior Stabilized ("LPS"), another femoral component developed, designed, manufactured, distributed and

sold by Defendants. Defendants specifically promoted the LPS High Flex as accommodating "a higher range of motion" and helping patients "maintain an active lifestyle after a total knee replacement."

3.      In a total knee arthroplasty, the femoral component options, such as the LPS High Flex or the LPS, are used in conjunction with a patellar component and a tibial component, together, to form the Zimmer NexGen Complete Knee Solution system (all components collectively hereinafter "Zimmer NexGen Knee").

4.      Defendants knew or should have known that the LPS High Flex, when used within the Zimmer NexGen Knee, can loosen in patients, such as Plaintiff Barry Davis, causing personal injury, significant pain, and loss of movement, and that this injury can only be remedied through subsequent revision surgery and/or knee replacement.  The LPS High Flex was defectively designed, developed, manufactured and sold because its increased failure rate and risk of revision is unreasonably greater than other knee implants such as the LPS which achieve the same degree of mobility.  The LPS High Flex has no clinical benefit over the LPS that compensates in whole or part for the increased risk.  Further, Defendants misled health care professionals and the public into believing that the use of the LPS High Flex in the Zimmer NexGen Knee was safe and effective for use in knee replacement surgery; engaged in deceptive, misleading and unconscionable promotional or sales methods to convince health care professionals to utilize the LPS High Flex, even though Defendants knew or should have known that the LPS High Flex was unreasonably unsafe; and failed to warn health care professionals and

the public of the increased risk of failure associated with the LPS High Flex while offering little to no additional benefit over the Zimmer LPS.

## PARTIES

5.    Plaintiff Barry Davis is a citizen of the State of Kentucky, and resides in Spencer County, Kentucky.

6.    Defendant Zimmer, Inc. is a corporation organized and existing under the laws of Delaware, and has its principal place of business located in Warsaw, Kosciusko County, Indiana.

7.    Defendant Zimmer Holdings, Inc. is a corporation organized and existing under the laws of Delaware, and has its principal place of business located in Warsaw, Kosciusko County, Indiana.

8.    Defendant Zimmer Melia & Associates, Inc. is a corporation organized and existing under the laws of Tennessee, and has its principal place of business in Franklin, Williamson County, Tennessee.

9.    Defendant Zimmer Orthopaedic Surgical Products, Inc. is a corporation organized and existing under the laws of Ohio, and has its principal place of business in Dover, Tuscarawas County, Ohio.

10.    At all times material hereto, Defendants developed, designed, tested, manufactured, distributed, marketed, and sold the Zimmer NexGen Knee and the LPS High Flex. Defendants' products, including the Zimmer NexGen Knee and the LPS High Flex are sold throughout the world, including within the state of Kentucky. Further, a substantial part of events or omissions giving rise to the claim herein occurred in the

Louisville Division of the United States District Court for the Western District of Kentucky.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12.     Venue in this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a), as a substantial number of the events, actions or omissions giving rise to Plaintiff's claims occurred in this district.  At all times material hereto, Defendants conducted substantial business in this district.

## FACTUAL BACKGROUND
## KNEE REPLACEMENT BACKGROUND

13.     Total knee arthroplasty (TKA), also called total knee replacement, is a commonly performed medical procedure.  The surgery is designed to help relieve pain and improve joint function, generally in people with severe knee degeneration due to arthritis or trauma.

14.     The TKA procedure is done by separating the muscles and ligaments around the knee to expose the inside of the joint. The ends of the thigh bone (femur) and the shin bone (tibia) are removed or reduced as is often the underside of the kneecap (patella).

15.     About 85 to 90 percent of total knee replacements are successful up to ten years.

16.     Mechanical loosening means that the attachment between the artificial knee and the bone has become loose.

17.     Loosening can occur with any component of the artificial knee: the femoral, the tibial or the patellar component.

18.     Loosening of an artificial knee can be visualized and diagnosed using radiographic imaging.  Images of a loose knee joint are one or more radiolucent lines around the contours of the artificial knee joint.

19.     A loose artificial knee causes pain and wearing away of the bone.  A loose artificial knee can involve a severe psychical burden for the patient and severely restrict the patient's daily activities.

20.     Once the individual loses function of the knee or the pain becomes unbearable, another operation can be required to revise the knee replacement.  A loose, painful artificial knee can usually, but not always, be replaced.

21.     The purpose of knee revision surgery is to remove a failed knee implant and replace it with a new one.

22.     Upon information and belief, in an operation revising a total knee failure due to loosening, the most significant problem is the reconstruction of the severe bone loss caused by the failed total knee prosthesis.  The bone loss makes it difficult to restore the stability in the revised total knee.

23.    Upon information and belief, the success rate of a revision operation is lower than the initial total knee replacement and the risks and complications are higher. The range of motion in the knee after revision surgery may decrease and the walking capacity may be also diminished.  The rate of an artificial knee replacement loosening is higher after revision surgery than in primary knee replacement surgery.

## ZIMMER NEXGEN KNEE FACTS

24.    Zimmer was founded in 1927, and purports to be a worldwide leader in the design and manufacture of orthopaedic reconstructive, spinal and trauma devices, dental implants, and related orthopaedic surgical products.

25.    The Zimmer NexGen Knee offers a "high-flex" femoral component that purports to allow a greater degree of flexion than the standard femoral component.

26.    The Defendants generally, manufactured, labeled, packaged, distributed, supplied, marketed, advertised, and/or otherwise engaged in all activities that are part and parcel of the sale and distribution of a medical device, and by said activities, caused the Zimmer NexGen Knee to be placed into the stream of commerce throughout the United States.

27.    Defendants made, participated in and/or contributed to filings with the FDA in conjunction with the approval process for the Zimmer NexGen Knee and the LPS High Flex.

28.    Upon information and belief, Defendants were in control of the design, assembly, manufacture, marketing, distribution, packaging, labeling, processing,

supplying, promotion, sales, and the issuance of product warnings and related information with respect to the Zimmer NexGen Knee and the LPS High Flex.

29.     Defendants were at all times material hereto subject to the laws of the United States of America, including provisions relating to the FDA, and the rules and regulations thereof, in conjunction with the approval process, labeling, and other after-market activities that pertain to the Zimmer NexGen Knee and the LPS High Flex.

30.     At various times material and relevant hereto in the last two decades, Defendants jointly or individually sought approval from the FDA for the sale and marketing of the Zimmer NexGen Knee and the LPS High Flex.

31.     In seeking approval for the sale of the LPS High Flex, Defendants represented that it was substantially equivalent to a previously approved, or predicate device and therefore could receive premarket approval under Section 510(k) of the Federal Food, Drug and Cosmetic Act.

32.     By claiming substantial equivalence, Defendants knew the LPS High Flex was subject to less testing and scrutiny.

33.     The LPS High Flex and the Zimmer NexGen Knee have been widely advertised, marketed and represented by the Defendants as a safe and effective treatment.

## ZIMMER NEXGEN KNEE PROBLEMS

34.     In 2007, The Journal of Bone and Joint Surgery (British Edition), published a peer reviewed study by professors at the Seoul National University College of Medicine titled, *High Incidence of Loosening of the Femoral Component in the Legacy Posterior Stabilised-Flex Total Knee Replacement*.  The study showed that 38% of the implanted

LPS high flex knees were loose shortly after 2 years post implant.  From the group of patients with loose knees, over half (56%) had their knee revised due to pain.

35.     From the time that Defendants first began selling the Zimmer NexGen Knee in the United States, the product labeling and product information for the Zimmer NexGen Knee failed to contain adequate information, instructions, and warnings concerning implantation of the product and the increased risks that the Zimmer NexGen Knee, including the LPS High Flex can loosen in patients.

36.     Despite its knowledge of the serious injuries associated with use of the LPS High Flex and the Zimmer NexGen Knee, Defendants engaged in a marketing and advertising program which as a whole, by affirmative and material misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of the LPS High Flex and the Zimmer NexGen Knee were safe.

37.     Upon information and belief, Defendants downplayed and understated the health hazards and risks associated with the use of the LPS High Flex and the Zimmer NexGen Knee and through promotional literature as well as sales visits to orthopaedic surgeons, deceived doctors and potential users of the LPS High Flex and the Zimmer NexGen Knee by relaying positive information, while concealing the nature and extent of known adverse and serious health effects.

38.     Upon information and belief, Defendants marketed, promoted, advertised, sold and distributed the LPS High Flex when they knew or should have known that it was a defectively designed product because of its increased failure rate and risk of revision is unreasonably greater than other knee implants such as the LPS which achieve the same

degree of mobility.  The LPS High Flex has no clinical benefit over the LPS that compensates in whole or part for the increased risk.

## FACTUAL ALLEGATIONS

39.     On May 4, 2009, Plaintiff's physician implanted a Zimmer NexGen Knee system including a LPS High Flex femoral component.

40.     Prior to October 29, 2008, the treating physician for Plaintiff, as well as Plaintiff, was exposed to the aforementioned advertising and marketing campaign directly by the Defendants.

41.     Plaintiff Barry Davis and Plaintiff's physician, either through direct promotional contact with Sales Representatives of Defendants, through word-of-mouth from other health care providers influenced by Defendants, and/or through promotional materials from Defendants, received the information the Defendants intended that they receive, to-wit: that the LPS High Flex and the Zimmer NexGen Knee were safe and effective for use in TKA procedures.

42.     Plaintiff began experiencing severe and debilitating pain shortly after implant.

43.     Plaintiff returned to Plaintiff's physician several times due to consistent pain relating to his Zimmer NexGen Knee and on or about April 28, 2010 Plaintiff discovered his Zimmer NexGen Knee was experiencing "loosening" and Plaintiff's physician discussed the possibility of revision surgery.

44.     On or about October 18, 2010, Plaintiff had a second surgery to revise/replace his previously implanted Zimmer NexGen Knee.  Plaintiff's entire artificial knee system was replaced.

45.     As a direct and proximate result of the use of the Zimmer NexGen Knee, including the LPS High Flex, Plaintiff suffered, and continues to suffer, serious bodily injury and harm.

46.     As a direct and proximate result of the use of the Zimmer NexGen Knee, including the LPS High Flex, Plaintiff incurred, and continues to incur, medical expenses to treat his injuries and condition.

47.     At no time material to his use of the Zimmer NexGen Knee was Plaintiff or his physicians told, warned, or given information about the higher risks of loosening in the Zimmer NexGen Knee and the LPS High Flex.

### COUNT I
### Strict Liability

48.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

49.     At all relevant times hereto, Defendants were engaged in the development, testing, manufacturing, marketing and sales of Zimmer NexGen Knee and the LPS High Flex.  Defendants designed, manufactured, marketed, and sold Zimmer NexGen Knee and the LPS High Flex to medical professionals and their patients, knowing they would be implanted for knee replacements.

50.     The Zimmer NexGen Knee and the LPS High Flex as designed, manufactured, marketed and sold by Defendants reached Plaintiff without substantial change in its condition and were used by Plaintiff in a reasonably foreseeable and intended manner.

51.     The Zimmer NexGen Knee and the LPS High Flex were "defective" and "unreasonably dangerous" when it entered the stream of commerce and was received by Plaintiff, because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer.  At no time did Plaintiff have reason to believe that Zimmer NexGen Knee and the LPS High Flex were in a condition not suitable for their proper and intended use among patients.

52.     The Zimmer NexGen Knee and the LPS High Flex were used in the manner for which it was intended, that is, for artificial knee replacement.  This use resulted in injury to Plaintiff.

53.     Plaintiff was not able to discover, nor could he have discovered through the exercise of reasonable care, the defective nature of the LPS High Flex and the Zimmer NexGen Knee.  Further, in no way could Plaintiff have known that Defendants had designed, developed, and manufactured the LPS High Flex and the Zimmer NexGen Knee in such a way as to increase the risk of harm or injury to the recipients of them.

54.     The LPS High Flex and the Zimmer NexGen Knee are defective in design because of their propensity to loosen and cause patients unnecessary pain and repeat surgical procedures.

55.     The LPS High Flex and the Zimmer NexGen Knee are defective in design because the increased risk for failure leading to revision surgery is unreasonably greater than other knee implants such as the LPS.  The LPS High Flex offers no clinical benefit over the LPS that compensates in whole or part for the increased risk.

56.     The LPS High Flex and the Zimmer NexGen Knee are unreasonably dangerous because it was sold to Plaintiff without adequate warnings regarding, *inter alia,* the propensity of the LPS High Flex and the Zimmer NexGen Knee to loosen and cause serious pain and necessitate additional surgery; the post-marketing experience of higher rates of loosening and revision surgery with the LPS High Flex and the Zimmer NexGen Knee; and the probability of suffering loosening and revision surgery.

57.     Defendants failed to develop and make available alternative products that were designed in a safe or safer manner, even though such products were feasible and marketable at the time Defendants sold Zimmer NexGen Knee and the LPS High Flex to Plaintiff.

58.     The LPS High Flex and the Zimmer NexGen are unreasonably dangerous because they were sold to Plaintiff without adequate warnings regarding, *inter alia,* the increased risk of failure of Zimmer NexGen LPS High Flex Knee resulting in revision surgery which is unreasonably greater than other knee implants such as the LPS.  The LPS High Flex offers no clinical benefit over the LPS that compensates in whole or part for the increased risk.

59.     Defendants had knowledge and information confirming the defective and dangerous nature of the Zimmer NexGen Knee and the LPS High Flex.  Despite this

knowledge and information, Defendants failed to adequately and sufficiently warn Plaintiff and his physicians that Zimmer NexGen Knee and the LPS High Flex cause serious injuries including, high failure rate, loosening of the implant, bone loss, decreased range of motion, diminished mobility, and revision surgery.

60.     As a direct and proximate result of Defendants' wrongful conduct, including  the LPS High Flex and the Zimmer NexGen Knee's defective and dangerous design and inadequate warnings, Plaintiff has sustained and will continue to sustain severe and debilitating injuries, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, pain and suffering, and increased risk of future medical complications, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

61.     WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT II
## Products Liability - Failure to Warn

62.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

63.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the LPS High Flex and the Zimmer NexGen Knee and, in the course

of same, directly advertised or marketed the product to the FDA, health care professionals, and consumers, or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of the LPS High Flex and the Zimmer NexGen Knee.

64.     Defendants failed to adequately warn health care professionals and the public, including Plaintiff Barry Davis and his prescribing physician, of the true risks of the LPS High Flex and the Zimmer NexGen Knee, including that the LPS High Flex and the Zimmer NexGen Knee could loosen, causing severe pain and injury, and requiring further treatment, including revision surgery and/or knee replacement.

65.     Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the LPS High Flex and the Zimmer NexGen Knee.  Had they done so, proper warnings would have been heeded and no health care professional, including Plaintiff's physician, would have used the LPS High Flex and the Zimmer NexGen Knee, or no consumer, including Plaintiff, would have purchased and/or used the LPS High Flex and the Zimmer NexGen Knee.

66.     Defendants failed to timely and reasonably provide adequate instructions and training concerning safe and effective use of the LPS High Flex and the Zimmer NexGen Knee. Had they done so, healthcare professionals, including Plaintiff's physician, could have safely and effectively implanted the LPS High Flex and the Zimmer NexGen Knee, without causing serious pain and injury to patients, including Plaintiff.

67.     The LPS High Flex and the Zimmer NexGen Knee, which were researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendants, was defective due to inadequate post-marketing warnings and/or instruction because, after Defendants knew or should have known that there was reasonable evidence of an association between the Zimmer NexGen Knee and knee replacement loosening causing serious injury and pain.  Defendants failed to provide adequate warnings to health care professionals and the consuming public, including Plaintiff, and continued to aggressively promote the LPS High Flex and the Zimmer NexGen Knee.

68.     The LPS High Flex and the Zimmer NexGen Knee, which were researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendants, was defective due to inadequate post-marketing warnings and/or instruction regarding the increased risk of failure of the LPS High Flex resulting in revision surgery while know that a safer alternative design, the LPS existed.  Defendants failed to provide adequate warnings to health care professionals and the consuming public, including Plaintiff, and continued to aggressively promote the LPS High Flex knee, even though it provides no clinical benefits over other knee replacement systems such as the LPS.

69.     Defendants failed to perform or otherwise facilitate adequate testing; failed to reveal and/or concealed testing and research data; and selectively and misleadingly revealed and/or analyzed testing and research data.

70.     As a direct and proximate result of Defendants' wrongful conduct,

including  the LPS High Flex and the Zimmer NexGen Knee's defective and dangerous

design and inadequate warnings, Plaintiff has sustained and will continue to sustain

severe and debilitating injuries, economic loss, and other damages including, but not

limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss

of balance, immobility, pain and suffering, and increased risk of future medical

complications, for which he is entitled to compensatory and equitable damages and

declaratory relief in an amount to be proven at trial.

71.     WHEREFORE, Plaintiff demands judgment against Defendants for

compensatory and punitive damages, together with interest, costs of suit, attorneys' fees

and all such other relief as the Court deems proper.

### COUNT III
### Products Liability – Defective Design

72.     Plaintiff incorporates by reference all other paragraphs of this Complaint as

if fully set forth herein.

73.     Defendants is the researcher, developer, manufacturer, distributor,

marketer, promoter, supplier and seller of the LPS High Flex and the Zimmer NexGen

Knee, which is defective an unreasonably dangerous to consumers.

74.     The LPS High Flex and the Zimmer NexGen Knee are defective in their

design or formulation in that it is not reasonably fit, suitable or safe for its intended

purpose and/or its foreseeable risks exceed the benefits associated with its design and

formulation.  The LPS High Flex and the Zimmer NexGen Knee are defective in design

or formulation in that they lack efficacy and/or they pose a greater likelihood of injury than other knee replacement devices and similar knee replacement devices on the market and are more dangerous than ordinary consumers can reasonably foresee.

75.     If the design defect were known at the time of manufacture, a reasonable person would have concluded that the utility of the LPS High Flex and the Zimmer NexGen Knee did not outweigh the risk of marketing a product designed in that manner.

76.     The defective condition of the LPS High Flex and the Zimmer NexGen Knee rendered it unreasonably dangerous and/or unreasonably safe, and the LPS High Flex and the Zimmer NexGen Knee were in this defective condition at the time it left the hands of the Defendants. The LPS High Flex and the Zimmer NexGen Knee was expected to and did reach consumers, including Plaintiff Barry Davis, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

77.     Plaintiff and his physician were unaware of the significant hazards and defects in the LPS High Flex and the Zimmer NexGen Knee.

78.     The LPS High Flex and the Zimmer NexGen Knee was unreasonably dangerous and/or not reasonably safe in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the period that Plaintiff used the LPS High Flex and the Zimmer NexGen Knee, it was being utilized in a manner that was intended by Defendants.

79.     At the time Plaintiff received and used the LPS High Flex and the Zimmer NexGen Knee, it was represented to be safe and free from latent defects.

80.     Defendants is strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendants because of the design defects.

81.     Defendants knew or should have known of the danger associated with the use of the LPS High Flex and the Zimmer NexGen Knee, as well as the defective nature of the LPS High Flex and the Zimmer NexGen Knee, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the LPS High Flex and the Zimmer NexGen Knee so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the LPS High Flex and the Zimmer NexGen Knee.

82.     As a direct and proximate result of Defendants' wrongful conduct, including  the LPS High Flex and the Zimmer NexGen Knee's defective and dangerous design and inadequate warnings, Plaintiff has sustained and will continue to sustain severe and debilitating injuries, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, pain and suffering, and increased risk of future medical complications, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

83.     WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT IV
### Negligence

84.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

85.     At all relevant times, Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, marketing, sale, and distribution of LPS High Flex and the Zimmer NexGen Knee, including a duty to ensure that LPS High Flex and the Zimmer NexGen Knee did not pose a significantly increased risk of bodily injury to its users.

86.     Defendants had a duty to exercise reasonable care in the advertising and sale of LPS High Flex and the Zimmer NexGen Knee, including a duty to warn Plaintiff and other consumers, of the dangers associated with the consumption of LPS High Flex and the Zimmer NexGen Knee that were known or should have been known to Defendants at the time of the sale of LPS High Flex and the Zimmer NexGen Knee to the Plaintiff.

87.     Defendants failed to exercise reasonable care in the design, testing, manufacture, marketing, sale and distribution of LPS High Flex and the Zimmer NexGen Knee because Defendants knew or should have known that LPS High Flex and the Zimmer NexGen Knee had a propensity to cause serious injury, including loosening of

the implant, bone loss, decreased range of motion, diminished mobility, and revision surgery.

88.     Defendants failed to exercise ordinary care in the labeling of LPS High Flex and the Zimmer NexGen Knee and failed to issue adequate pre-marketing or post-marketing warnings to prescribing doctors and the general public regarding the risk of serious injury, including, loosening and revision surgery.

89.     Defendants knew or should have known that Plaintiff could foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

90.     Defendants breached their duty of reasonable care to Plaintiff by failing to exercise due care under the circumstances.

91.     As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, testing, manufacture, sale, and distribution of LPS High Flex and the Zimmer NexGen Knee, Plaintiff was implanted with LPS High Flex and the Zimmer NexGen Knee and suffered severe and debilitating injuries, economic loss,  and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, pain and suffering, and increased risk of future medical complications, for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

92.     WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT V
## Breach of Express Warranty

93.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

94.     Defendants advertised, labeled, marketed and promoted its product, the LPS High Flex and the Zimmer NexGen Knee, representing the quality to health care professionals, the FDA, Plaintiff Barry Davis, and the public in such a way as to induce its purchase or use, thereby making an express warranty that the LPS High Flex and the Zimmer NexGen Knee would conform to the representations.  More specifically, Defendants represented that the LPS High Flex and the Zimmer NexGen Knee was safe and effective, that it was safe and effective for use by individuals such as Plaintiff, and/or that it was safe and effective to treat Plaintiff's condition.

95.     The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

96.     The LPS High Flex and the Zimmer NexGen Knee did not conform to the representations made by Defendants in that the LPS High Flex and the Zimmer NexGen

Knee was not safe and effective, was not safe and effective for use by individuals such as Plaintiff, and/or was not safe and effective to treat in individuals, such as Plaintiff.

97.     At all relevant times, Plaintiff used the LPS High Flex and the Zimmer NexGen Knee for the purpose and in the manner intended by Defendants.

98.     Plaintiff and Plaintiff's physician, by the use of reasonable care, would not have discovered the breached warranty and realized its danger.

99.     The breach of the warranty was a substantial factor in bringing about Plaintiff's injuries.

100.     As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, testing, manufacture, sale, and distribution of LPS High Flex and the Zimmer NexGen Knee, Plaintiff was implanted with LPS High Flex and the Zimmer NexGen Knee and suffered severe and debilitating injuries, economic loss,  and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, pain and suffering, and increased risk of future medical complications, for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

101.     WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**COUNT VI**
**Breach of Implied Warranty**

102.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

103.    The LPS High Flex and the Zimmer NexGen Knee was not reasonably fit for the ordinary purposes for which such goods are used and did not meet the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manner.  Nor were the LPS High Flex and the Zimmer NexGen Knee minimally safe for its expected purpose.

104.    At all relevant times, Plaintiff used the LPS High Flex and the Zimmer NexGen Knee for the purpose and in the manner intended by Defendants.

105.    Plaintiff and Plaintiff's physician, by the use of reasonable care would not have discovered the breached warranty and realized its danger.

106.    The breach of the warranty was a substantial factor in bringing about Plaintiff's injuries.

107.    As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, testing, manufacture, sale, and distribution of the LPS High Flex and the Zimmer NexGen Knee, Plaintiff was implanted with the LPS High Flex and the Zimmer NexGen Knee and suffered severe and debilitating injuries, economic loss,  and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, permanent instability and loss of balance, immobility, pain and suffering, and increased risk for future medical complications, for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

108.    WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

1.    Compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiff for all his injuries and damages, both past and present;

2.    Special damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all of his injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including permanent instability and loss of balance, and pain and suffering.

3.    Double or triple damages as allowed by law;

4.    Attorneys' fees, expenses, and costs of this action;

5.    Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

6.    Such further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Dated:  April 27, 2011

Respectfully submitted,

GOLDBERG SIMPSON, LLC


/s/ *Kevin P. Weis*
Kevin P. Weis, Esq.
David B. Gray, Esq.
Norton Commons
9301 Dayflower Street
Prospect, KY  40059
(502) 589-4440
Fax: (502) 581-1344
Email: kweis@goldbergsimpson.com
Email:dgray@goldbergsimpson.com
*Counsel for Plaintiff*


Anapol Schwartz Weiss Cohan
Feldman & Smalley, P.C.

James R. Ronca, Esq.
Thomas R. Anapol, Esq.
Melissa Fry Hague, Esq.
1710 Spruce Street
Philadelphia, PA 19103
Phone: (215) 790-1130
Email: JRonca@anapolschwartz.com
Email: TAnapol@anapolschwartz.com
Email: Mhague@anapolschwartz.com
Petition for Pro Hac Vice to be filed

The Garrett Law Center, PLLC

D. Mitchell Garrett, Esq.
P.O. Box 1349
Tulsa, OK 74101-1349
(918) 895-7216
Email:  mitchell@garrettlawcenter.com
Petition for Pro Hac Vice to be filed